IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>RAMON JAVELLE POWELL,<br><br>　　　　Defendant._____/ | No. CR-10-00292-CW (DMR)<br><br>**ADDENDUM TO APRIL 23, 2010 RELEASE ORDER** |

　　　Pursuant to the Bail Reform Act, 18 U.S.C. § 3142 et seq., the Court conducted a pretrial bail hearing regarding defendant Ramon Javelle Powell.  Pretrial Services prepared a full bail study, which recommended that Mr. Powell be released on a number of conditions including the imposition of a $50,000 unsecured appearance bond.  The government did not oppose Mr. Powell's release, but argued that the Court should order a $100,000 secured bond in Mr. Powell's case.

　　　After a full hearing, and consideration of the bail study as well as proffers by both the government and defendant, this Court held that a $100,000 unsecured appearance bond, along with a custodian and other significant conditions, would reasonably mitigate Mr. Powell's risk of flight and danger to the community.  The full set of conditions are set forth in an executed version of this judicial district's carbon-copy form order (Docket No. 10), as well as an accompanying Release

Order (Docket No. 7), both filed on April 23, 2010.[1]

At the bail hearing, the government stated its intent to appeal the aspect of the Court's release order that imposed an unsecured rather than secured $100,000 appearance bond. However, the government ultimately appealed on a different issue, with broader legal implications that extend beyond the facts of this particular case. The government appears to argue in its appeal that the Court is without authority to order unsecured appearance bonds as a condition of pretrial release without requiring the bond's signatories to "qualify" as "sureties" pursuant to Federal Rule of Criminal Procedure 46(e). Qualification under Rule 46(e) requires a proposed surety to "demonstrate by affidavit that its assets are adequate" to cover the amount of the bond. Fed. R. Crim. P. 46(e).

Because the government changed the basis for its appeal, the district court remanded the matter to this Court to issue an addendum that addresses the government's Rule 46(e) argument. (Docket No. 17). This Court's April 23, 2010 order sets forth its analysis under the Bail Reform Act that resulted in its decision to release Mr. Powell pursuant to a $100,000 unsecured bond. The Court now addresses the broader legal question of whether, under the Bail Reform Act, a court may order unsecured appearance bonds as a condition of release *without* requiring signatories to "qualify" as "sureties" pursuant to Federal Rule of Criminal Procedure 46(e).

The government posits that the Court cannot order an unsecured appearance bond as a condition of release without also requiring each co-signer or "surety" to provide proof of assets adequate to pay the full amount of the bond. *See* "United States' Appeal of Pretrial Release Order" at p. 4:15-18 (Docket No. 12) ("Defendant cannot be released on the current conditions because the unsecured $100,000 bond fails to comply with the Bail Reform Act and the Federal Rules of Criminal Procedure because the sureties have not sufficiently demonstrated by affidavit that they are qualified with adequate assets to cover the amount of the bond."); *see also* 18 U.S.C. § 3142(c)(1)(B)(xii) (permitting a defendant to be released on a bail bond with solvent sureties and

---

[1] The Northern District of California has developed its own standard one-page form pretrial release order entitled "Order Setting Conditions of Release and Appearance Bond." Typically, the magistrate court's release order consists of an executed version of that form. In this case, the government indicated at the bail hearing that it intended to appeal an aspect of the release order. For that reason, on April 23, 2010, the magistrate court issued a more detailed written release order to accompany the form order, to aid in the district court's review.

2

requiring sureties to execute such an agreement); Fed. R. Crim. P. 46(e) (requiring sureties to sign an affidavit demonstrating that they have adequate assets).

The government's position, taken to its logical conclusion, is that defendants who pose a flight risk that is mitigable with an appearance bond can *never* be released if they cannot identify someone in their life with significant and identifiable assets. Under the government's interpretation, people who do not have immediate access to material wealth of their own – or through their friends and family – in many circumstances simply will not have a meaningful shot at pretrial release. As discussed below, the government's interpretation is flawed for a number of reasons. It fundamentally mischaracterizes the nature of the unsecured bond ordered by this Court. It is also an overly technical and misguided interpretation of the language of the Bail Reform Act that runs counter to two of its key statutory directives, namely that "[t]he judicial officer may not impose a financial condition that results in the pretrial detention of the person;" (18 U.S.C. §3142(c)(2)), and that a court must fashion the "least restrictive conditions" to mitigate the attendant risks. 18 U.S.C. § 3142(c)(1)(B). Finally, it is contrary to the well-established practice of this district's magistrate judges, and indeed, the practice of many magistrate judges across the country. *See United States v. Thomas*, 615 F.Supp. 2d 1083, 1085-86 (N.D. Cal. April 29, 2009) (rejecting the government's argument on Rule 46(e) and noting that this district's practice, where appropriate, of ordering unsecured appearance bonds without proof of assets is employed routinely throughout the federal courts.)

The bail statute contemplates that the Court must fashion "the least restrictive conditions" that will reasonably assure the appearance of the person as required as well as the safety of the community. 18 U.S.C. § 3142(c)(1)(B). The provision then goes on to list thirteen possible conditions (including section 3142(c)(1)(B)(xii) -- a bail bond with solvent sureties) that the Court *may* impose. A fourteenth "catch-all" provision allows the Court to impose "any other condition that is reasonably necessary" to assure defendant's appearance and community safety. 18 U.S.C. § 3142(c)(1)(B)(xiv).

In the instant case, this Court explicitly stated that it was *not* ordering a "bail bond with solvent sureties" pursuant to section 3142(c)(1)(B)(xii). Rather, the Court expressly ordered that

3

Mr. Powell be released on an *unsecured appearance bond* pursuant to *section 3142(c)(1)(B)(xiv)'s catch-all provision* as part of the set of *"least restrictive conditions"* needed to address the attendant risks. For this reason, the Court did not require a Rule 46(e) affidavit from the three signatories to the unsecured bond. Instead, the Court ascertained their incomes and employment histories during the bail hearing, and questioned one of the signatories, defendant's mother, about the available equity in her home. The Court then had each of them voluntarily co-sign the $100,000 unsecured appearance bond pursuant to the catch-all provision. Even if it is likely that two of the three co-signers do not each have $100,000 in available assets today, each stands to suffer real and long-lasting financial harm if defendant disappears and the government obtains a money judgment against them.[2] The Court instructed the co-signers that they were executing a legally enforceable agreement, and that they were obligating themselves to pay a certain amount of money to the government if defendant is non-compliant. The court emphasized the risks to all co-signers, as well as the serious nature of their voluntary agreements to stake their financial future on defendant's compliance.

Since the Court expressly fashioned the unsecured appearance bond under section 3142(c)(1)(B)(xiv)'s catch-all provision, no Rule 46(e) affidavit is required for any of the co-signers. This is because the term "surety"-- as it is used in section 3142(c)(1)(B)(xii) and Rule 46(e) – applies only when the Court imposes a condition that requires proof of currently-sufficient assets.

The catch-all provision set forth in section 3142(c)(1)(B)(xiv) provides ample authority for the Court to employ co-signers who do not meet Rule 46(e)'s asset requirement. "Co-signers" to unsecured appearance bonds often are interchangeably referred to as "sureties," but the generalized use of that label, or a slip of the tongue, should not govern where the judge's intent is clear.

---

[2] The Court believes that the unsecured bond provides both adequate and appropriate incentive to Mr. Powell to comply with the conditions of his release. The Court notes that the determination of the amount of an appearance bond, as well as its co-signers, must necessarily be based on the circumstances at hand. For example, a wealthy defendant who has the motive and means to flee may not be sufficiently deterred by a $500,000 self-secured appearance bond. In this case, the selected amounts and co-signers have been tailored to create compelling pressure on Mr. Powell to comply with his conditions of release. This Court is persuaded that the amount of the bond and the selection of its co-signers creates an adequate deterrent for Mr. Powell. He will not want to cause real and significant financial damage to the co-signers, all of whom are close to him.

4

Co-signers to an unsecured appearance bond imposed through the catch-all provision do not suddenly transform into bail bond "sureties" simply because the Court refers to them by that label.

Moreover, as a rule of procedure, Rule 46(e) is subordinate to the Bail Reform Act. *See, e.g., Sibbach v. Wilson & Co.*, 312 U.S. 1, 9-10 ("Congress has undoubted power to regulate the practice and procedure of federal courts, and may exercise that power by delegating to this or other federal courts authority to make rules not inconsistent with the statutes of Constitution of the United States.")  Rule 46(e) should not be read to countermand the Bail Reform Act's congressional directives that (1) a judge must fashion the "least restrictive conditions" to mitigate the particular risks (18 U.S.C. § 3142(c)(1)(B)); and (2) "[t]he judicial officer may not impose a financial condition that results in the pretrial detention of the person." 18 U.S.C. § 3142(c)(2). A reasonable interpretation that reconciles the procedural rule with the statute is to apply Rule 46(e) to those true "sureties" employed under section 3142(c)(1)(B)(xii), and not to those who make financial guarantees by co-signing appearance bonds pursuant to section 3142(c)(1)(B)(xiv).

Such a reading also comports with a policy underlying Rule 46 – the elimination of financial barriers to poor defendants' ability to be released on bail:

> The amendments [to Rule 46] are designed to make possible (and to encourage) the release on bail of a greater percentage of indigent defendants than now are released. To the extent that other considerations make it reasonably likely that the defendant will appear it is both good practice and good economics to release him on bail even though he cannot arrange for cash or bonds in even small amounts. In fact it has been suggested that it may be a denial of constitutional rights to hold indigent prisoners in custody for no other reason than their inability to raise the money for a bond. *Bandy v. United States,* 81 S.Ct. 197 (1960).

Advisory Committee Notes to 1966 Amendment to Fed. R. Crim P. 46.

To the extent the government's position may be based on a concern for its future ability to protect its lien interest in the event it must collect on the bond, the Ninth Circuit has held that such a concern is "improper:"

> Since the Bail Reform Act of 1984 nowhere authorizes consideration of the government's ability to collect on security, this concern is not a proper basis for imposing a further restrictive condition on [defendant's] release.

*United States v. Frazier*, 772 F.2d 1451, 1453 (9th Cir. 1985).

This is not the first time the government has raised this, or similar arguments in this judicial district. For example, the government appealed a release order by Judge Beeler which included a $50,000 unsecured bond. *United States v. Cruz,* CR-09-01157 DLJ (Docket No. 24). Judge Beeler ordered that defendant be released on an unsecured appearance bond under section 3142(c)(1)(B)(xiv)'s "catch-all" provision as the least restrictive condition sufficient to mitigate the risks in that case. Judge Beeler rejected the government's contention that section 3142(c)(1)(B)(xi) requires defendants to execute an agreement to forfeit property in order to support the unsecured bond. The government appealed. The Honorable D. Lowell Jensen affirmed Judge Beeler's release order. (Docket No. 30).

Last year, Judge Zimmerman rejected the government's argument regarding Rule 46(e) in *United States v. Thomas*, 615 F.Supp.2d 1083 (N.D. Cal. April 29, 1009). In so doing, Judge Zimmerman also held that the Bail Reform Act permits a court to release a defendant on an unsecured bond, without a Rule 46(e) affidavit of assets, as "the least restrictive condition" in appropriate circumstances:

> This brings me to whether the Bail Reform Act and Rule 46(e) prohibit a court from including, in the set of conditions on which a defendant would [be] released pending trial, a requirement that people who have significant connections to the defendant – but have relatively little net worth – sign a bond under which they would be obligated to pay the government, over time, a sizeable sum of money should defendant violate the bond. Any analysis begins with a defendant's constitutional right to be released on bail. *United States v. Salerno*, 481 U.S. 739 (1987); *Stack v. Boyle*, 342 U.S. 1 (1951). Congress implemented this right in the Bail Reform Act which requires that a defendant be released on the least restrictive conditions. 18 U.S.C. § 3142(c)(1)(B). Section 3142(b) permits a defendant's release on an unsecured bond. Section 3142(c)(1)(B)(xii) permits a defendant to be released on a bail bond with solvent sureties while subsection xiv permits a defendant to be released on "any other condition" that will accomplish the purposes of pretrial release. Finally, section 3142(c)(2) prohibits the court from imposing "a financial condition that results in the pretrial detention of the person." Read together, I believe these statutes permit a court to release a defendant on a bond with conditions, but not secured by assets or net worth, when the court concludes that such a bond contains the least restrictive conditions that will assure defendant's appearance and the safety of the community.
> 
> * * *
>
> I conclude, as do many of my colleagues around the country, that the term "surety" as it is used in 3142(c)(1)(B)(xii) and Rule 46(e) applies when the court has concluded that it is necessary to look to the assets of the surety to assure compliance with the bond.

*Thomas*, 615 F. Supp. 2d at 1085.

For the reasons set forth above, this Court finds that the Bail Reform Act and Rule 46(e) permit a court to order an unsecured appearance bond as an appropriate condition of release pursuant to 3142(c)(1)(B)(xiv), without requiring the signatories to "qualify" as "sureties" under Rule 46(e). This is the true regardless of whether the court refers to the signatories as "co-signers" or "sureties."

Dated:  June 21, 2010

_____
DONNA M. RYU
United States Magistrate Judge